IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR KING COUNTY

| | |
|---|---|
| MICHAEL MCMAHON,<br><br>   Plaintiff,<br><br>  v.<br><br>META PLATFORMS, INC.,<br>dba META, formerly known as FACEBOOK, INC.<br><br>   Defendant. | No.<br><br>**PLAINTIFF'S COMPLAINT** |

## **I. INTRODUCTION**

1.1   Plaintiff, Michael McMahon, by and through his attorney, Omeed Ghaffari (SBH Legal), files this Complaint against Defendant, Meta Platforms, Inc., dba Meta, formerly known as Facebook, Inc., for the following causes of action: (1) defamation, (2) publication of facts placing Plaintiff in a false light, (3) tortious interference with business relations, (4) injury to personal property, (5) negligence, and (6) breach of implied duty of good faith.

/ / /

/ / /

Page 1 – **PLAINTIFF'S COMPLAINT**

## II. PARTIES

2.1 Plaintiff, Michael McMahon, is a resident of the State of Washington. He works full-time as a video game streamer, formerly partnered with Meta Platforms, Inc.

2.2 Defendant, Meta Platforms, Inc. ("Meta"), is an online social media corporation and social networking service headquartered at 1 Hacker Way, Menlo Park, CA 94025.

## III. JURISDICTION AND VENUE

3.1 This Court has personal jurisdiction over Defendant under Revised Code of Washington (RCW) 4.28.185. *See also State v. LG Electronics, Inc.,* 186 Wash.2d 169, 375 P.3d 1035 (2016) ("a state may authorize its courts to exercise personal jurisdictional over an out-of-state- defendant only if the defendant has certain minimum contacts with the state").

3.2 This Court has subject matter jurisdiction over this action pursuant to RCW 2.08.010 and Constitution of the State of Washington (WA CONST) Art. 4, § 6.

3.3 Venue is proper in King County Superior Court pursuant to Superior Court Civil Rule (CR) 82.

## IV. FACTS

4.1 Plaintiff works full-time as a video game streamer. He operates under the username "Thinnd" for all his content. Plaintiff regularly posts live streams of himself playing video games and uploads videos to his social media platforms.

4.2 Plaintiff's primary source of income is generated through his content creation. He earns money from receiving tips from his viewers, from putting ads on his live streams, from sales of merchandise, from viewers who pay a monthly subscription, and from third parties via sponsorships in relation to "Thinnd."

4.3 Plaintiff began live streaming on or about January 2018. He primarily used Defendant's social media platforms on Facebook to conduct his streaming and video uploads.

4.4     Over the course of several months, Plaintiff began to witness his streams grow significantly in following. Plaintiff eventually grossed over 1,000,000 followers on his Facebook page. By 2020, Plaintiff was one of the top streamers on Facebook's gaming platform in terms of viewers and earnings.

4.5     Plaintiff's increase in followers led to an increase in revenue. Between March 2020 and April 2020, Plaintiff's ad revenue increased from $8,669.02 to $21,609.43. During this same period, Plaintiff's revenue from tips and subscriptions increased from $9,054.88 to $85,487.56.

4.6     On May 27, 2020, Plaintiff and Defendant entered into a contractual agreement called "Facebook Gaming Creator Program." At the time of signing this contractual agreement, Plaintiff was gaining roughly 8,000 followers per day.

4.7     On June 22, 2020, Plaintiff's former girlfriend made a Twitter post about him following their recent breakup. She would later delete the Twitter post and retract statements from the Twitter post in 2021.

4.8     On June 23, 2020, at 12:36 AM PST, Defendant, under its Twitter handle "@FacebookGaming," made a comment on the former girlfriend's June 22, 2020 Twitter post. The Defendant's Twitter comment acknowledged the former girlfriend's claims as true without conducting any investigation. Defendant further stated to the public that it was conducting an investigation regarding this matter.

4.9     On June 24, 2020, Defendant sent email correspondence to Plaintiff that it was terminating its Facebook Gaming Creator Program contract with Plaintiff, effective immediately.

4.10    In attempt to resolve this matter in good faith and to mitigate damages, Plaintiff made multiple attempts to contact Defendant about the recently terminated contract. Plaintiff

spoke with multiple representatives of Defendant on numerous occasions from June 2020 to August 2020. One of Defendant's representatives directed Plaintiff to speak with Josh Maresca ("Mr. Maresca"); the remaining representatives, including Mr. Maresca, ignored all of Plaintiff's attempted communications and/or blocked Plaintiff's contact information during this period.

4.11     Defendant failed to issue any follow-up statements regarding its alleged "pending investigation" leading fans, viewers, business entities, and the general public to believe Plaintiff was still under an investigation.

4.12     Following Defendant's comment, contract termination, and failure to follow-up with the public on its alleged investigation, Plaintiff sustained significant damages to his business and personal life.

4.13     Additionally, Defendant tampered with Plaintiff's streaming account. Defendant completely demonetized Plaintiff's account, removed Plaintiff's ability to receive donations, removed gaming icons from the Facebook page, prevented new followers from subscribing, and prevented Plaintiff's streaming account to show up in search results and the Defendant's discovery page where fans can discover new content creators.

4.14     As a result of Defendant's reckless actions and inaction, all of Plaintiff's revenue sources experienced a sharp decline, Plaintiff lost numerous sponsorship deals, other streamers refused to collaborate with Plaintiff, Plaintiff was outcasted from content creators, Plaintiff was outcasted from the streamer community, and Plaintiff faced constant harassment, threats and bullying on Defendant's social medial platform during his livestreams and in private messages.

4.15     Plaintiff's revenue from donations and subscriptions fell from $71,368.02 in May 2020 to $12,157.38 in July 2020 and continued to decline.

4.16   Plaintiff's revenue from ads fell from $27,265.83 in May 2020 to $11,986.53 in July 2020. Plaintiff stopped receiving ad revenue after July 2020.

4.17   In June 2020 and July 2020, all of Plaintiff's sponsors terminated their sponsorships. Plaintiff was previously partnered with StreamerLoot Merch (now called Simple Mutant), Elgato, Xidax, and StreamElements. Plaintiff was earning approximately $1,200 per month from StreamerLoot and $1,000 per month from Xidax.

4.18   Plaintiff also reported to Defendant the harassment, threats, and bullying on Defendant's social media platform. Defendant failed to assist Plaintiff with this serious issue.

4.19   On or about January 2022, Plaintiff learned from his former girlfriend that Defendant never contacted her to investigate the claims made in her Twitter post about Plaintiff. Since Defendant never contacted Plaintiff, nor his former girlfriend about the situation, it became clear Defendant did not conduct a good faith investigation into this matter.

4.20   Plaintiff did not learn Defendant's Twitter comment about conducting the alleged investigation was untrue until January 2022.

4.21   On February 3, 2022, Plaintiff's former girlfriend signed a sworn affidavit confirming she never had any communications with Defendant regarding her June 22, 2020 Twitter post. She further stated Defendant took her comments out of context.

4.22   The former girlfriend would later delete the aforementioned Twitter post, retracted statements about Plaintiff, and acknowledged her statements were misinterpreted by Defendant.

4.23   Plaintiff continued to follow-up with Defendant to resolve the aforementioned issues on multiple occasions throughout 2022. Defendant eventually responded on April 5, 2022, almost two years later.

1       4.24    Mr. Maresca, on behalf of Defendant, stated they were working to resolve the issues reported by Plaintiff.

        4.25    Plaintiff continued to follow-up with Mr. Maresca regularly throughout 2022 and stated the reported issues regarding the streaming page were not being resolved. Mr. Maresca assured Plaintiff the problems would get fixed. To date, Plaintiff still experiences numerous problems on his streaming page.

        4.26    Mr. Maresca and Plaintiff held a video conference to discuss the above-referenced issues. Plaintiff explained how he was being patient but was not seeing any action taken by Defendant. Mr. Maresca intimidated Plaintiff and suggested his only option to save his streaming business was to continue waiting and further suggested that getting Plaintiff's attorney involved would ruin Plaintiff's chances at salvaging his already damaged streaming business.

        4.27    To date, Defendant has failed to take any corrective action. Plaintiff's streaming business continues to suffer significantly low profits as a result of Defendant's actions and inaction.

## V. FIRST CAUSE OF ACTION

### Defamation

        5.1     Plaintiff repeats and incorporates by reference the preceding paragraphs as if fully set forth herein.

        5.2     Defendant engaged in defamatory conduct by making misleading statements in a Twitter post on June 22, 2020. Such misrepresentations include, but are not limited to, affirming the statements made by Plaintiff's former girlfriend as true and accurate, and claiming the situation was under investigation during Plaintiff's account suspension.

5.3     The conduct described in paragraphs 5.1 through 5.2 constitutes libel pursuant to Washington law. *See Van Hoven v. Pre-Employee.com, Inc.*, 156 Wash.App. 879, 885 (Wash. Ct. App. 2010); see also *Mark v. Seattle Times*, 96 Wash.2d 473, 486 (Wash. 1981).

5.4     Defendant's Twitter post was an unprivileged communication that contained several false statements regarding Plaintiff.

5.5     Defendant acknowledged the statements in the former girlfriend's June 22, 2020 Twitter Post was true and also stated it was investigating this matter.

5.6     The former girlfriend later retracted statements regarding Plaintiff, deleted the June 22, 2020 Twitter Post, and claimed Defendant misinterpreted her comments about Plaintiff.

5.7     By failing to actually investigate the statements made by Plaintiff's former girlfriend, Defendant had a reckless disregard for the truth.

5.8     Defendant knowingly made a false statement that the situation was being taken seriously and was under investigation because Defendant never spoke with either Plaintiff or his former girlfriend about the situation.

5.9     By terminating Plaintiff's partnership agreement, Defendant implied a good faith investigation occurred and Plaintiff was found at fault when in fact no investigation occurred.

5.10    Defendant's defamatory conduct led to the termination of numerous sponsorships and tarnished Plaintiff's reputation in the streaming community which led to fewer subscriptions and significantly less income from viewers.

/ / /

/ / /

/ / /

## VI. SECOND CAUSE OF ACTION

### False Light

6.1     Plaintiff repeats and incorporates by reference the preceding paragraphs as if fully set forth herein.

6.2     Defendant's public Twitter post contained misleading statements that placed Plaintiff into a false light in the eyes of the public.

6.3     The conduct described in paragraphs 6.1 through 6.2 constitutes an invasion of Plaintiff's privacy via publication of facts placing Plaintiff in a false light, as described by Washington law. *See Eastwood v. Cascade Broadcasting Co.*, 106 Wash.2d 466, 470-471 (Wash. 1986).

6.4     Defendant's statements were publicized on Twitter. The misleading statements characterize Plaintiff as an abuser and under investigation for abuse allegations, none of which were true and would be highly offensive to a reasonable person.

6.5     By failing to actually conduct any investigation into this matter, Defendant was aware the statements about its alleged investigation were false when publishing the Twitter post and Defendant had a reckless disregard for the truth regarding the statements made by the former girlfriend.

## VII. THIRD CAUSE OF ACTION

### Tortious Interference

7.1     Plaintiff repeats and incorporates by reference the preceding paragraphs as if fully set forth herein.

7.2     Defendant interfered with Plaintiff's business relations with his sponsors by falsely claiming Plaintiff was under investigation during the period in which his account was suspended.

7.3 The conduct described in paragraphs 7.1 through 7.2 constitute an interference with Plaintiff's business relations, as described by Washington law. *See Manna Funding, LLC v. Kittitas County*, 173 Wash.App. 879, 897 (Wash. Ct. App. 2013).

7.4 Defendant interfered with the existing contractual relationships Plaintiff maintained with Elgato Gaming, Xidax PC's, Streamelements, and StreamerlootCo Merch.

7.5 Defendant knew of these contractual relationships and intentionally interfered with them by making false and misleading statements in the Twitter post. Due to Defendant's conduct, all noted relationships have been terminated.

## VIII. FOURTH CAUSE OF ACTION

### Injuring Personal Property

8.1 Plaintiff repeats and incorporates by reference the preceding paragraphs as if fully set forth herein.

8.2 Defendant damaged Plaintiff's personal property, specifically the brand equity of his streaming business, by concurring with the misrepresented statements by his former girlfriend and by tampering with his streaming business as it operates through Defendant's platform.

8.3 The conduct described in paragraphs 8.1 through 8.2 constitute an injury to Plaintiff's personal property, as described by Washington law. *See Sherman v. Kissinger*, 146 Wash.App 855, 195 P.3d 539 (Wash. Ct. App. 2008).

## IX. FIFTH CAUSE OF ACTION

### Negligence

9.1 Plaintiff repeats and incorporates by reference the preceding paragraphs as if fully set forth herein.

9.2     Defendant negligently tampered with Plaintiff's streaming account, failed to address Plaintiff's complaints of threats, harassment, and bullying on Defendant's social media platform, and failed to conduct a good-faith investigation which would have clarified the misinterpreted statements by Plaintiff's former girlfriend and prevented the resultant damage to Plaintiff's business and reputation.

9.3     The conduct described in paragraphs 9.1 through 9.2 constitute negligence by Defendant, as described by Washington law. *See Lynn v. Labor Ready, Inc.*, 136 Wash.App 295, 151 P.3d 201 (Wash. Ct. App 2006).

9.4     Defendant had a duty to conduct a good faith investigation as represented to the public in its Twitter post. Defendant breached its duty by failing to speak with either party involved in the situation that led to Plaintiff's terminated partnership agreement.

9.5     Defendant publicly posting that an investigation was ongoing, implicitly concurring with the statements by Plaintiff's former girlfriend, failing to conduct a good faith investigation, and failing to provide any further clarification to the public on the issue led to damages involving Plaintiff's streaming business and reputation.

9.6     Defendant was also negligent in ignoring Plaintiff's complaints of harassment and bullying facilitated on Defendant's social media platform.

9.7     Defendant was also negligent in handling Plaintiff's reported issues with demonetization, search engine results, and other problems with Plaintiff's streaming account.

## X. SIXTH CAUSE OF ACTION

**Breach of Contract – Implied Duty of Good Faith**

10.1    Plaintiff repeats and incorporates by reference the preceding paragraphs as if fully set forth herein.

10.2     Defendant had an implied duty of good faith and fair dealing in the Facebook Gaming Creator Program Agreement with Plaintiff. Defendant violated this duty by failing to discuss any issues it had with Plaintiff and failing to conduct a good faith investigation before terminating the Agreement.

10.3     The conduct described in paragraphs 10.1 through 10.2 constitutes breach of the implied duty of good faith pursuant to Washington law. *See Rekhter v. State, Dept. of Social and Health Services*, 180 Wash.2d 102, 323 P.3d 1036 (2014).

## XI. RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment and an order against Defendant as follows:

11.1     That the Court adjudge and decree that Defendant engaged in the conduct complained herein.

11.2     That the Court adjudge and decree that the conduct complained of constitutes defamation, publication of facts placing Plaintiff in a false light, tortious interference with business relations, injury to personal property, negligence, and breach of implied duty of good faith in violation of Washington law.

11.3     That the Court assess civil penalties in the amount of $18,944,304.02 against Defendant and for Plaintiff: $1,018,519.59 for 28 months of lost ad revenue; $1,716,651.18 for 28 months of lost donations and supporter revenue; $600,000 for suffering constant threats, harassment, and bullying on Defendant's social medial platform; $1,800,000 for permanent damage to Plaintiff's reputation and the brand equity of "Thinnd"; $61,600 for 28 months of lost earnings from sponsorships; and $13,747,533.25 for lost projected income based on the growth rate of Plaintiff's business.

11.4     That the Court issue an injunction against Defendant to prevent any further publication regarding Plaintiff or his streamer identity ("Thinnd").

1   11.5   For such other relief as the Court may deem just and proper.

DATED:  January 6, 2023

                          SBH LEGAL

*/s/ Omeed Ghaffari*

Omeed Ghaffari, WSBA No. 55897
1200 SW Main Street
Portland, OR  97205-2040
Telephone: (503) 412-3105
Fax: (503) 721-9272
Email: oghaffari@sbhlegal.com
Of Attorneys for Plaintiff