UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL MCMAHON,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>META PLATFORMS, INC.,<br><br>　　　　　　　Defendant. | CASE NO. 2:23-cv-00171-RSL<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION |

　　　　This matter comes before the Court on "Defendant Meta Platforms, Inc.'s Motion to Compel Arbitration and Dismiss." Dkt. # 14. Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

### BACKGROUND

　　　　Plaintiff is a video game streamer operating under the username "Thinnd." His primary source of income is from content creation, particularly live streaming himself playing video games, for which he receives tips, advertising payments, subscriptions, and sponsorships. Since January 2018, plaintiff's primary outlet has been Facebook. In May 2019 and again in May 2020, plaintiff entered into a contractual agreement called the "Facebook Gaming Creator Program" through which he received payment for posting live gaming videos on Facebook. The signed agreement stated that it was an addendum to the Facebook terms of use, including the Commercial Terms, provided hyperlinks to those

ORDER GRANTING DEFENDANT'S MOTION TO
COMPEL ARBITRATION - 1

terms, and incorporated them by reference. Dkt. # 18 at 3: Dkt. # 18-1 at 3. The Commercial Terms in force between May 2018 and June 2020 provided:

> If you reside in the US or your business is located in the US: You and we agree to arbitrate any claim, cause of action or dispute between you and us that arises out of or relates to any access or use of the Facebook Products for business or commercial purposes ("commercial claim.") . . .
>
> The Federal Arbitration Act governs the interpretation and enforcement of this arbitration provision. All issues are for an arbitrator to decide, except that only a court may decide issues relating to the scope or enforceability of this arbitration provision . . .
>
> If you do not wish to be bound by this provision . . . , you must notify us as set forth below within 30 days of the first acceptance date of any version of these commercial Terms containing an arbitration provision.

Dkt. # 15 at 76-77. Plaintiff concedes that he did not opt out of any version of the arbitration agreement.

On June 23, 2020, Facebook Gaming commented on a Twitter post stating "We're sorry to hear that this happened to you. Thank you for bringing this to our attention; we take this very seriously. The partner in question has been suspended while we investigate." Dkt. # 16 at 6. Plaintiff alleges that the Twitter post was about him, that it had been made by his former girlfriend, and that it generally accused him of abuse. Dkt. # 1-2 at ¶¶ 4.7 and 6.4. Defendant notified plaintiff on June 24, 2020, that it was immediately terminating the Facebook Gaming Creator Program agreement. The termination resulted in alterations to plaintiff's account, preventing him from receiving donations or subscriptions, demonetizing the account, and preventing his page from showing up in search results. Plaintiff alleges that, following defendant's comment and contract termination, he "sustained significant damages to his business and personal life," including the loss of "numerous sponsorship deals, other streamers refus[ing] to collaborate with Plaintiff,

ORDER GRANTING DEFENDANT'S MOTION TO
COMPEL ARBITRATION - 2

Plaintiff was outcasted from content creators, Plaintiff was outcasted from the streamer community, and Plaintiff faced constant harassment, threats, and bullying on Defendant's social media[] platform during his livestreams and in private messages." Dkt. # 1-2 at ¶¶ 4.12 and 4.14. In addition, third-party sponsors terminated their sponsorships. Dkt. # 1-2 at ¶ 4.17. In January 2022, plaintiff learned that defendant had not, in fact, conducted an investigation of his ex-girlfriend's post. When he was unable to obtain corrective action from defendant, plaintiff filed this lawsuit asserting claims of (1) defamation, (2) false light, (3) tortious interference, (4) injury to personal property, (5) negligence, and (6) breach of the implied duty of good faith.

## DISCUSSION

The Federal Arbitration Agreement ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted).

On a motion to compel arbitration, the court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the answer is yes to both questions, the court must enforce the agreement." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The FAA "leaves no place for the exercise of discretion by a district court." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Whether a valid agreement to arbitrate exists depends on "ordinary state-law principles that govern the formation of contracts" and "generally applicable contract defenses, such as fraud, duress, or unconscionability." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Plaintiff argues in the first instance that Meta's motion should be denied because the arbitration clause found in the Commercial Terms is unconscionable and therefore unenforceable. Under California law, which governs the contract issues in this case, unconscionability is a contractual defense "refer[ing] to an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910, 190 Cal.Rptr.3d 812, 353 P.3d 741 (2015). *See also AT&T Mobility*, 563 U.S. at 340 (under California law, "[a] finding of unconscionability requires a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.") (internal quotation marks and citations omitted). Plaintiff argues only that the arbitration provision is procedurally unconscionable, making no effort to show that the contract was substantively one-sided or unreasonably harsh. Dkt. # 20 at 11-13. He has therefore failed to bear his burden of showing that the arbitration provision is invalid on unconscionability grounds.[1]

---

[1] Even if unconscionability were evaluated in such a way that strong evidence of procedural unconscionability could obviate the requirement to show that the contract terms were unreasonably favorable to Meta, the evidence of "oppression" and "surprise" offered by plaintiff is not particularly strong. Plaintiff asserts that the Commercial Terms were offered on a take-it-or-leave-it basis and were not included within the four corners of the parties' agreement. Although there is a "degree of procedural unconscionability" in a contract of adhesion, *Sanchez*, 61 Cal. 4th at 915, 190 Cal.Rptr.3d 812, 353 P.3d 741, "an arbitration agreement is not adhesive if there is an opportunity to opt out of it," *Mohamed v. Uber Techs., Inc*., 848 F.3d 1201, 1211 (9th Cir. 2016) (quotation marks and citations omitted). Courts applying California law have found that because Meta's Commercial Terms provide contracting parties with an opportunity to opt out, they are neither adhesive nor oppressive. *Lag Shot LLC v. Facebook, Inc., No*. 21-CV-01495-

ORDER GRANTING DEFENDANT'S MOTION TO
COMPEL ARBITRATION - 4

Plaintiff next argues that the arbitration provision is invalid because he agreed to it under duress. There is no support for this assertion. Plaintiff agreed to arbitrate disputes that arose out of or related to his commercial activities on Facebook long before defendant responded to the Twitter post, terminated the Facebook Gaming Creator Program agreement, and/or altered plaintiff's Facebook account. The Ninth Circuit has recognized a "presumption in favor of postexpiration arbitration of matters unless 'negated expressly or by clear implication' [for] matters and disputes arising out of the relation governed by contract." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1060–61 (9th Cir. 2020) (quoting *Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 204 (1991)). The presumption applies where the dispute "involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.* at 1061 (quoting *Litton*, 501 U.S. at 206). Plaintiff does not address the presumption or otherwise explain why he believes duress arising post-termination could invalidate a pre-existing agreement.

---

JST, 2021 WL 2660433 (N.D. Cal. June 25, 2021). Plaintiff's argument that he somehow lacked the opportunity to opt-out because he was not yet embroiled in a dispute with Meta is illogical and unsupported. Plaintiff cannot invalidate or ignore a contract provision simply because he did not realize its potential importance at the time of signing.

   With regards to plaintiff's evidence of "surprise," the three-page agreement plaintiff signed makes clear that it describes only some of the terms that bind the parties, calling attention to the exhibits attached to the agreement, Facebook's Terms of Service, and the Commercial Terms. Indeed, the signed agreement states that it is an "addendum" to those terms, putting plaintiff on notice that the meat of the agreement could be found through the blue, underlined hyperlinks provided. Under California law, "mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Long v. Provide Commerce, Inc.*, 245 Cal.App.4th 855, 200 Cal. Rptr. 3d 117, 122 (2016). Mutual assent does not require that the offeree have actually read the entire contract or even have subjectively realized that an arbitration agreement was in the offing. *Id*. at 123. Instead, an offeree is bound by terms if a reasonably prudent person would be put on inquiry notice of the terms' existence and contents. *Id*. Where, as here, the contract to which plaintiff objectively manifested assent contains an explicit textual notice that the contract contains other provisions, the notice is conspicuous and clear, and the additional contract terms are accessible through a colored, underlined hyperlink, plaintiff was on inquiry notice of the terms of the agreement.

ORDER GRANTING DEFENDANT'S MOTION TO
COMPEL ARBITRATION - 5

Finally, plaintiff argues that the arbitration agreement applies only to his negligence and breach of contract claims. The Commercial Terms reserve for the Court issues related to the scope of the arbitration provision, and the parties agreed "to arbitrate any claim, cause of action or dispute" "that arises out of or relates to any access or use of" Facebook for commercial purposes. Plaintiff argues that the promise to arbitrate applies only to those claims which have a "direct relationship" to his access or use of Facebook, such that claims that are tied to or in any way arise out of defendant's Twitter comment are not covered. Dkt. # 20 at 15. But that comment was made only because plaintiff was using Facebook for commercial purposes: it was because plaintiff was using defendant's platform that defendant announced plaintiff's suspension pending an investigation. In addition, all of plaintiff's claims are based, at least in part, on defendant's failure to conduct an investigation of his access and use of Meta products and/or changes defendant made to that access and use. "[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 65 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960)). Plaintiff would turn this presumption on its head, excluding from the reach of a valid arbitration clause claims that could have been, but were not, limited in such a way that they fall entirely outside the scope of the provision.

For all of the foregoing reasons, defendant's motion to compel arbitration (Dkt. # 14) is GRANTED. Where, as here, all of plaintiff's claims are subject to the arbitration clause, the case will be DISMISSED without prejudice. *Johnmohammadi v.*

*Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc*., 368 F.3d 1053, 1060 (9th Cir. 2004).

Dated this 14th day of July, 2023.

                                              Robert S. Lasnik
                                              United States District Judge